IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTINA THOMAS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-16-3908 |
| SGT. OLIVER,<br>BETTY JOHNSON,<br>NICOLE JACKSON,<br>TIARA THOMAS, and<br>TIA GILES | *<br><br>*<br><br>* | |
| Defendants | * | |

***

**MEMORANDUM OPINION**

Defendants Tia Giles, Nicole Jackson, Sgt. Oliver, and Tiara Thomas filed a motion to dismiss the above-entitled civil rights complaint on November 27, 2017. ECF No. 51. Defendant Betty Johnson was served with the complaint on December 19, 2017, but has not answered or otherwise responded to the complaint.[1] ECF No. 57. Plaintiff opposes the motion to dismiss. ECF No. 56. No hearing is necessary to resolve the matters pending. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below Defendants' motion will be denied as to the claims against Oliver, Thomas and Giles and granted as to Jackson.

**Background**

Plaintiff Christina Thomas, who at all times relevant to the complaint was incarcerated at the Baltimore City Detention Center for Women, alleges that she was assaulted on July 8, 2015, by correctional officers. She explains that Officer Tiara Thomas became angry when the dormitory "T.V. Card was misplaced." ECF No. 33 at p. 2. Officer Thomas demanded to know where the card was and threatened the entire dorm that if they did not tell her where it was they

---

[1] Johnson will be required to show cause why default judgment should not be entered against her in the Order which accompanies this Memorandum Opinion.

would not get the card back. The "dorm rep." gave Officer Thomas the TV card, but Officer Thomas angrily accused the entire dorm of playing games and threatened that if no one told her who took the card, it would not be given back to the dorm. *Id*. The dorm rep. then told Officer Thomas that Plaintiff had taken the card.[2] *Id*.

Officer Thomas ordered Plaintiff to put her hands on the wall and spread her legs so she could search Plaintiff even though Officer Thomas was already in possession of the TV card. Officer Tia Giles arrived to assist in searching Plaintiff, as well as Plaintiff's bed area and property. Giles claimed that she found something that Plaintiff was not supposed to have and Sgt. Oliver placed Plaintiff in handcuffs and left the area. ECF No. 33 at p. 2.

Plaintiff claims that after Sgt. Oliver left, Officer Thomas became disrespectful and called her names. Plaintiff states that Officer Thomas then grabbed her and began shaking her violently, stating that now she had a real reason to put Plaintiff on lock up. Officer Thomas then allegedly pushed her hand into Plaintiff's face and Plaintiff "came out of the handcuffs to block her from hitting" her. ECF No. 33 at p. 2. Plaintiff maintains that she was defending herself. *Id*.

Plaintiff claims that Officer Thomas began violently striking Plaintiff with a closed fist and Officer Giles began to attack Plaintiff by hitting her in the head, neck, and back. She further alleges that Officer Giles held Plaintiff's arms while Officer Thomas hit her numerous times, "digging and scratching me in my eyes." ECF No. 33 at p. 2. Plaintiff asserts that, "it was then that Ofc. Thomas slammed me on the ground, banged my head several times" and then "took her handcuffs and began beating me in my head numerous times repeatedly." *Id*. Plaintiff states that she bled severely from the right and middle side of her head, and sustained bruises to her eyes and face, as a result of the beating. *Id*., *see also* ECF No. 37-2 at pp. 1-7 (medical records).

---

[2] Plaintiff admits to taking the card from the TV and claims she did so because her report to Officer Thomas that she "felt threatened" on the dorm was not addressed. *See* ECF No. 37-1 at p. 5 (Inmate Statement dated July 9, 2015).

Plaintiff states that, following the assault, she was placed in the medical dorm and claims that she was never sent to an outside hospital for treatment. She further claims that pictures were not taken of her injuries until five days after the assault, after the scratches to her face had healed. ECF No. 33 at p. 2. As relief, Plaintiff seeks monetary damages. *Id*. at p. 1.

Plaintiff was charged with assaulting a correctional officer in a Notice of Inmate Rule Violation written by Officer Thomas. ECF No. 37-1 at p. 6. In addition, Officer Thomas pursued criminal charges against Plaintiff and an investigation of the matter was referred to the Internal Investigation Division (IID). *Id*. Questions arose from supervisory officers after reports written by Oliver, Thomas and Giles were reviewed and Plaintiff's injuries, which required sutures to her scalp, were noted. Further investigation was ordered because Plaintiff's injuries did not match the description of the events provided by the officers; the conclusion was that excessive force was used against Plaintiff. *See* ECF No. 37-6.

Plaintiff avers that Warden Betty Johnson is liable because she was responsible for protecting Plaintiff from malicious behavior of the officers; Facility Administrator Nicole Jackson was responsible for protecting Plaintiff from the violence of officers; and Sgt. Oliver was the superior officer responsible for the officers involved in the assault. ECF No. 33 at p. 3. Officers Thomas and Giles are named as Defendants for their alleged actions in assaulting Plaintiff. *Id*.

Defendants Tia Giles and Tiara Thomas move to dismiss the Eighth Amendment claim raised in the amended complaint because Plaintiff was a pre-trial detainee at the time of the alleged assault and as such the claim is governed by the Fourteenth Amendment. ECF No. 51-1 at pp. 3-4. They conclude that the Eighth Amendment claim must be dismissed with prejudice as a matter of law with respect to all of the Defendants. *Id*. at p. 4. Defendants Oliver and Jackson

3

aver that the amended complaint fails to state a claim against them as neither of them were present during the alleged assault. ECF No. 51-1 at pp. 4-5.

**Standard of Review**

In reviewing a complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994)) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

## Analysis

### Excessive Force Claim

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." __ U.S. __, 135 S. Ct. 2466, 2473 (2015). It is enough that a pretrial detainee show that the "force purposely or knowingly used against him was objectively unreasonable," *id.*, regardless of an officer's state of mind, *id.* at 2472 (cited in *Dilwworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Pursuant to *Kingsley,* this court must consider whether under the "facts and circumstances" of this particular case, and from the "perspective of a reasonable officer on the scene," the force used against Plaintiff was objectively excessive. *Kingsley* at 2473. Contrast this standard with that which applies in an Eighth Amendment claim for a convicted prisoner which requires this court to inquire if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). Further, in an Eighth Amendment claim, if force is applied maliciously and sadistically liability is not avoided simply

5

because the prisoner had the good fortune to escape serious harm. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Thus, in the instant case, Plaintiff is not required to offer evidence of the officers' states of mind during the use of force against her.

It borders on sophistry to suggest that the inartfully pled complaint of a self-represented prisoner should be dismissed because she identified the incorrect constitutional amendment that governs the claim asserted. This Court is obliged to construe liberally self-represented pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Where, as here, a colorable claim has been presented, technical deficiencies in the manner in which it is pled are an insufficient basis to dismiss the complaint.

## Supervisory Defendants

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an

affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Thus more than a simple allegation that a particular Defendant held a position that ostensibly imposed a duty upon them to insure their subordinates did not engage in misconduct is required.

Defendants Jackson and Oliver assert they are entitled to dismissal from the case because they were not involved in the incident. ECF No. 51. The asserted basis for the claim against Defendant Jackson is her role as Facility Administrator. ECF No. 56. With respect to Defendant Oliver, however, the complaint taken together with the exhibits submitted by Plaintiff separately and taken as true establish that she was involved in the incident beyond merely being in a supervisory position.

Sgt. Oliver's Matter of Record (ECF No. 37-4 at pp. 13 – 15) indicates that she was there during a portion of the incident and describes Plaintiff assaulting Officer Thomas. Statements written by Officers Thomas and Giles indicate that Oliver placed Plaintiff in handcuffs before the search of her property was conducted. ECF No. 37-4 at p. 17 (Thomas Statement), p. 8 (Giles Statement). Oliver's statement indicates she left after handcuffing Plaintiff and went to the "bubble" to make an entry in the logbook. ECF No. 37-4 at p. 13.

Review of all statements made by the officers involved led the shift commander (Major Karen Moore), the Security Chief, and the Managing Official to conclude that excessive force was used against Plaintiff and that an investigation into the matter was required. ECF No. 37-6 at p. 5, *see also* ECF No. 37-5, p. 2 (statement of Det. Likin indicating discrepancy between reports and injuries sustained by Plaintiff). Further, the Duty Captain, Captain Viola Hall, in a memorandum to Shift Commander Major Karen Moore, stated that she contacted Sgt. Oliver to obtain the Matter of Record reports from all officers involved and questioned why it took

"several hours to prepare the reports." ECF No. 37-6 at p. 6. After reviewing the reports, Hall questioned Oliver on why she left the area while Plaintiff was handcuffed and a search was taking place. *Id*. at p. 8. Oliver stated that she left because Plaintiff was "secured and not a threat when I left to sign the log book." *Id*. Oliver then told Hall that she refused to write that she used any force during the encounter with Plaintiff and that the "two other Officers involved in this Use of Force, used excessive force on the detainee Thomas, and coerced another detainee in the dorm to write a statement, which read exactly like the statement submitted by the other Officers." *Id*. Despite being instructed to write an accurate report, Oliver indicated that she was not going to write another report because she was "up for retirement." *Id*. Oliver's involvement in the incident extends beyond the immediate use of force against Plaintiff and includes her complicity in the institution of criminal charges against Plaintiff. The motion to dismiss with respect to Oliver is denied.

## Conclusion

Counsel will be appointed to represent Plaintiff for the remainder of this case. A separate Order denying and granting in part the motion to dismiss and appointing counsel for Plaintiff follows.

May 29, 2018                    _____/s/_____
                                DEBORAH K. CHASANOW
                                United States District Judge